UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF                                             NUMBER

**CHRIS LEVERT SANFORD**                        04-13648

DEBTOR

CHAPTER 13

**MEMORANDUM OPINION**

Nortrax South, Inc. ("Nortrax") filed its Motion to Deem Lease Rejected pursuant to 11 U.S.C. §365(a) and (d)(2), to Compel Surrender and for Relief from Automatic Stay pursuant to 11 U.S.C. §362(d)(1) on December 3, 2004. Nortrax alleged that debtor Chris Sanford defaulted on his obligations to Nortrax under an Equipment Rental Agreement ("ERA") for a piece of earth moving equipment ("the bulldozer"), and that Sanford failed to surrender the bulldozer after the agreement terminated pre-petition. It asked the Court to conclude that the lease had been terminated pre-petition, and therefore should be deemed rejected, and to order Sanford to disclose the location of the bulldozer. Nortrax also moved for relief from the automatic stay under 11 U.S.C. §362 to allow it to use state law remedies to recover the equipment.

The Court will grant the plaintiff's Motion to Deem Lease Rejected, to Compel Surrender and for Relief from the Automatic Stay for reasons set forth in this opinion.

**FACTS**

On or about February 19, 2004, employees of Nortrax, a company that sells and leases forestry and construction equipment manufactured by John Deere, helped Sanford

1

prepare and submit a credit application to John Deere Credit.[1] A few days later, Sanford leased a bulldozer from Nortrax on terms set forth in the February 23, 2004 Equipment Rental Agreement ("ERA"). Amanda Nealy, Nortrax's credit manager, testified that Nortrax obtained financing for the debtor's lease of the bulldozer through PowerPlan,[2] a third party financier of equipment parts, services and rental payments. Ms. Nealy testified that PowerPlan extended a $12,000 unsecured line of credit to Sanford.[3] Although the ERA gave Sanford the option to purchase the bulldozer, it did not require the debtor to buy the equipment at any time.

Sanford insisted that he never intended to lease the bulldozer, but instead that he had purchased it. He contended that Nortrax personnel encouraged him to sign the ERA to keep Nortrax from selling the bulldozer to another buyer while he tried to arrange financing to buy it. To support his version of events, Sanford offered into evidence a February 27, 2004 quotation[4] from Nortrax. The quotation outlined one possible set of terms for a purchase, and recited that its objective was to allow the buyer, pending approval from John Deere Credit of financing for the purchase of the bulldozer, to apply a percentage of rental payments to the down payment for a purchase.

On March 22, 2004, Ms. Nealy received a fax from John Deere Credit advising that John Deere Credit had suspended Sanford's credit application[5] pending resolution of a tax lien against Sanford.

---

[1] Plaintiff's Exhibit 2.

[2] PowerPlan does not finance equipment purchases, according to Ms. Nealy.

[3] No party offered evidence of any other terms of the arrangement with PowerPlan.

[4] Debtor's Exhibit G.

[5] Plaintiff's Exhibit 2.

My mid-March 2004, the debtor had made only one payment on the agreement. He made only one more payment, in April, 2004. Sanford did not make the May, 2004 payment or any payment coming due thereafter. Thus, Sanford made only two payments between its inception and the commencement of his bankruptcy.

Ms. Nealy testified that between May and August, 2004, Nortrax's sales representative, Joe Colegrove, attempted to contact Sanford several times to inform him of the status of his credit, to inspect the equipment and to alert him to his breach of the ERA. Colegrove unsuccessfully tried to reach Sanford by phone, mail and even personal visits.

On August 2, 2004, more than five months after Sanford signed the ERA, Ms. Nealy sent a letter to the debtor about the status of his account. The letter advised that Sanford's PowerPlan account was past due, and also that Nortrax's sales representative had not been able to contact him.[6] When Nealy's letter brought no response, Nortrax's lawyer on August 23, 2004 sent a letter by certified mail to both of the debtor's addresses.[7] That letter informed Sanford that his default under the terms of the ERA had resulted in a termination of the agreement,[8] and asked Sanford to surrender the bulldozer. Two days later, on August 25, 2004, Ms. Nealy wrote Sanford to inform him that because the ERA had ended due to Nortrax's election to cancel for default, it considered his

---

[6] Plaintiff's Exhibit 4.

[7] Plaintiff's Exhibit 7.

[8] Plaintiff's Exhibit 1, section 10 allows the lessor to terminate the lease upon the lessee's default.

3

continued possession of the bulldozer illegal.[9]  When Nortrax received no response to these letters, it sued Sanford to recover the bulldozer on October 27, 2004.[10]

Sanford filed a chapter 7 petition on November 2, 2004, and converted his case to a chapter 13 proceeding on November 16, 2004.

## ANALYSIS

I. The ERA is a True Lease

Sanford contends that the ERA is not a true lease, but was in fact a sale merely disguised as a rental agreement.  He testified that he intended to buy the bulldozer, and never intended to rent it.[11]  The debtor contends that title passed to him and that he gained an interest in the property, which he now owns subject to a vendor's privilege.  This contention is not supported by the evidence.

Nortrax asserts that the ERA meets the criteria for a *true lease* and not a *financed lease*, in which the debtor gained an interest in the leased property.  Section 3306(26)(b) of title 9 of the Louisiana Revised Statutes defines a *true lease* as a "lease entered . . . that does not satisfy the criteria of a lease intended as a security," which is a *financed lease*. A *financed lease* is a lease that "satisfies the criteria of a lease intended as a security as provided under R.S. 10:1-201(37)."  La. R.S. 9:3306(12)(b).  Section 1-201(37) sets forth the criteria for a *financed lease* as:

> a transaction [where] the consideration the lessee is to pay
> the lessor for the right to possession and use of the goods is

---

[9] Plaintiff's Exhibit 6.

[10] Plaintiff's Exhibit 9.  On November 24, 2004, after Sanford filed his bankruptcy petition, the state court rendered judgment in favor of Nortrax, ordering Sanford to surrender possession of the bulldozer immediately.

[11] Sanford never signed a promissory note or any other document evidencing his intent to purchase the equipment.

4

>   an obligation for the term of the lease not subject to termination by the lessee, and
>
>   (a) the original term of the lease is equal to or greater than the remaining economic life of the goods;
>
>   (b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
>
>   (c) the lessee has the option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease; or
>
>   (d) the lessee has an option to become owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lessee.

If a lease is not subject to termination by the lessee and the lease meets one of the requirements outlined in (a) through (d), then the lease is properly characterized as a *financed lease*.

The evidence makes plain that the ERA is not a financed lease within the meaning of these statutes.

First, the ERA gives Sanford the power to terminate the agreement. At any time, the debtor could have terminated the lease by returning the bulldozer and paying off all the rental payments he owed. Upon termination, the ERA imposes no further obligation on the debtor to pay for the rented equipment.

Though this alone justifies a conclusion that the lease is not a financed lease,[12] the remaining statutory criteria also support the conclusion that the ERA is properly characterized as a true lease. The original lease has no specific term. It simply provides

---

[12] *See,* James J. White & Robert S. Summers, *Uniform Commercial Code*, §21-3, 727 (5th ed. West 2000) ("A 'lease' terminable at the will of the lessee cannot be a security agreement … even if … there is a purchase option for nominal consideration.")

5

for a monthly rental payment.  Thus, the ERA cannot satisfy La. R.S. 10:1-201(37)(a).  Also, although the debtor has the option to renew the lease, he is not required to do so.  Thus, the ERA does not satisfy La. R.S. 10:1-201(37)(b).  Nor does the lease meet the requirement of La. R.S. 10:1-201(37)(c), because the lessee's renewal option is not tied to the remaining economic life of the bulldozer.  Finally, although the ERA gives the lessee the option to buy the bulldozer, only ninety percent (90%) of his rental payments may be applied to the down payment, and to buy the equipment Sanford must pay the balance of the purchase price.  The total price thus is significantly greater than the rental payments, and far in excess of the "nominal consideration" cited in La. R.S. 10:1-201(37)(d).

The language of La. R.S. 10:1-201(37) disposes of the debtor's argument that the ERA is a financed lease simply because it contains an option to purchase: "[A] transaction does not create a security interest merely because it provides that . . . (c) the lessee has an option to renew the lease or to become the owner of the goods."

The only other evidence the debtor offered to support his claim that the transaction was a sale was the Nortrax quotation introduced as Exhibit G.  However, the quotation is dated four days after the signing of the ERA, and merely appears to be a proposed modification of the purchase option.  No credible evidence suggested that the debtor ever took any steps to finalize a transaction on these terms, and the quotation expired by its own terms on March 27, 2004, thirty days after it was dated.

The ERA does not meet the statutory criteria of a financed lease.  Accordingly, it was a true lease, and did not transfer an ownership interest in the bulldozer to the debtor.

II. The ERA Was Cancelled Pre-Petition

The Louisiana Lease of Movables Act, La. R.S. 9:3301 *et seq.*, establishes the procedure by which a lessor may cancel a lease of movable property. Section 3320(A) provides that a lessor who decides to cancel a lease upon the default of the lessee shall:

> forward a written notice to the lessee to that effect, which notice may **either** be personally delivered to the lessee or mailed to him by registered or **certified mail at his address as shown in the lease agreement** or at the address the address mutually agreed upon in the writing of the parties, or if there is no such address, then at **the lessee's last known address**. [emphasis added]

Surrender of the leased property is required within either of two specified time periods: (1) five days from the receipt of the notice of cancellation by the debtor, or (2) five days of the mailing of the notice. La. R.S. 9:3321. Upon a lessee's failure to surrender the leased property, the lessor may file a summary proceeding in state court to compel surrender. La. R.S. 9:3322.

Nortrax followed these procedures. The evidence showed that the lessor sent numerous letters to the lessee/debtor advising Sanford he had defaulted under the ERA, and eventually notified him that it had terminated the agreement as provided for in the contract itself.[13] When Sanford did not surrender the bulldozer and refused all contact with Nortrax's representatives, Nortrax filed suit in the Twentieth Judicial District Court to recover the bulldozer. In the state court proceeding Nortrax asserted that it had properly cancelled the ERA pursuant to La. R.S. 9:3320(A) and prayed that the court

---

[13] Plaintiff's Exhibit 1, section 10.

7

order the surrender of possession of the bulldozer.  On November 24, 2004 the state court ordered Sanford to immediately surrender the bulldozer.[14]

Nortrax terminated the ERA pre-petition by complying with the requirements of the Louisiana Lease of Movables Act.  By terminating the ERA, Nortrax effectively ended all rights that Sanford had in the agreement pre-petition, which bars Sanford from attempting to preserve and assume the ERA now as an executory contract or unexpired lease.  *See In re 717 Grand Street Corp.*, 259 B.R. 1 (Bankr. E.D. N.Y. 2000) (franchise agreements were properly terminated pre-petition and the automatic stay was modified to allow pursuit of remedies under the agreements).

### III. Relief from the Automatic Stay

Because Nortrax cancelled the ERA before Sanford filed bankruptcy, the remaining issue is whether the automatic stay should be modified to allow Nortrax to recover the bulldozer.

Section 362 of the Bankruptcy Code gives the court the power to grant relief from the automatic stay specifically by terminating, annulling, modifying or conditioning the stay.  Section 362(d) specifically allows for lifting the stay for cause.  Additionally, bankruptcy courts can annul the stay to legitimize acts taken in violation of the stay that otherwise may be voidable because the acting party was not aware of the existence of the stay.  *Sikes v. Global Marine*, 881 F.2d 176, 178 (5th Cir. 1989); 3 *Collier on Bankruptcy* ¶ 362.07, at 362-82.  The court may annul the automatic stay retroactively to the date of the filing of the petition.  *Sikes,* at 178.

---

[14] Plaintiff's Exhibit 9.  The state court judgment rendered in favor of the plaintiff and merely ordered the surrender of the bulldozer.  Accordingly, the court implicitly concluded that Nortrax had properly cancelled the ERA.

8

Nortrax sought to enforce its rights against the debtor before having knowledge of the existence of the bankruptcy filing and the resulting automatic stay, and in fact, before the actual filing of the petition. Sanford did not file his bankruptcy petition until after Nortrax took action against him in state court. Upon learning of the bankruptcy proceeding, Nortrax, in the present action, sought relief from the automatic stay in order to validate and retroactively authorize its pre-petition actions that continued to their completion post-petition.

Sanford has no ownership interest in the bulldozer as a result of Nortrax's prepetition termination of the ERA. Accordingly, the automatic stay is annulled retroactive to the date on which Mr. Sanford filed his initial bankruptcy petition.

## CONCLUSION

The ERA between Sanford and Nortrax was a true lease within the meaning of La. R.S. 9:3306(26). Nortrax properly terminated the agreement pre-petition after the debtor's default, and properly sought relief in state court for the surrender of the leased property. The court will by separate order retroactively annul the automatic stay as to Nortrax's actions to recover possession of the bulldozer that Sanford leased.

Baton Rouge, Louisiana, January 31, 2005.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE